# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NAFIZ WATKINS,                                  *

Plaintiff                                       *

v                                               *            Civil Action No. CCB-20-208

BALTIMORE CITY, et al.                          *

Defendants                                      *
                                              ***

## <u>MEMORANDUM OPINION</u>

Nafiz Watkins is an inmate at Roxbury Correctional Institution.  Now pending are his motions for a temporary restraining order and preliminary injunction (ECF 5) and to appoint counsel (ECF 14).  In the motion for a temporary restraining order and preliminary injunction, which is supported by Watkins's declaration, Watkins alleges that he is being denied adequate medical care, including physical therapy for an injury to his right femur (i.e. thigh bone).  ECF 5.  On February 12, 2020, the court directed the defendants to file an expedited response to the motion. ECF 9.  On February 26, 2020, Watkins filed a memorandum in support and another declaration in support of his motion for a temporary restraining order.  ECF 11.  Watkins subsequently filed a motion to appoint counsel.  ECF 14.  On March 23, 2020, the Office of the Attorney General by its counsel filed a response with 182 pages of Watkins's verified medical records.  ECF 15 & 15-1.  On April 13, 2020, Watkins filed a reply in the form of a declaration in opposition to the response.  ECF 16.  On April 16, 2020, defense counsel filed a response to the reply.  ECF 17.  On June 10, 2020, Watkins filed a declaration as a second reply to the response.  ECF 18.[1]

---

[1] On June 10, 2020, Watkins filed a request for entry of default against defendants.  ECF 19.  Under Federal Rule of Civil Procedure 55(a), default may be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  The failure to plead or defend does not automatically entitle a plaintiff to entry of default judgment.  The decision whether to enter a default is left to the discretion of the court.  *See Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002).  Entry of

## BACKGROUND

Watkins alleges that on December 2, 2017, an unidentified member of the correctional staff assaulted him[2] by kicking him in his right thigh, injuring his femur.[3]  On September 21, 2018, Watkins was taken to Meritus Medical Center ("Meritus") for unrelated treatment[4] and his right leg was x-rayed after he complained of pain.  ECF 5-1, pp. 1–2.  He contends the x-ray resulted in an "instruction/recommendation" to "consider [a] 3-phase bone scan or tagged white blood cell scan."  *Id*., p. 2.  He maintains that he has not received the recommended scans due to an informal policy/practice of giving the medical needs of prisoners low priority and refusing them outside medical care unless the condition is life threatening.  *Id*., pp. 2–3.  Watkins states that he filed an Administrative Remedy Procedure ("ARP") on an unidentified date and nothing was done.  *Id*., p. 2.  He asserts that he is threatened with irreparable harm because of the nature of his injury and, if he does not receive proper treatment, he may never walk again normally or "even die or need amputation of his right leg."  ECF 5, p. 3.  As relief, he asks this court to issue an order to "ensure that he receives proper medical care."  *Id*., p. 1.

Watkins sustained multiple gunshot wounds to the lower extremities in 2015.  ECF 15-1, pp. 11, 19.  At Meritus, his right femur was x-rayed to investigate his complaints of chronic pain. The impression of the x-ray results was:

> There is no acute fracture.  Patient is status post fraction repair of the femur with prior gunshot or shrapnel.  Extensive new bone formation is seen over the previous

---

default judgment is disfavored and is reserved in cases where the adversary process has been halted by an unresponsive party.  *See Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) ("We have repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." (citations omitted)).  Service is proceeding on the defendants, and though none have yet accepted service, there is no evidence that any defendant has deliberately acted to impede the progress of this case.  A default judgment will not be entered.

[2] The Complaint alleges, among other things, that the femur was reinjured when Watkins was assaulted at Baltimore Central Booking and Intake Center.  ECF 1, pp. 3–4.

[3] Watkins was shot in his lower extremities in 2015.  ECF 15-1, pp. 11, 19.

[4] On September 21, 2018, Watkins was admitted to Meritus after he alleged correctional officers had physically and sexually assaulted him during a strip search. *Id*., p. 159.  He was discharged the same day.  *Id.*, p. 160.

traumatic region.  This may be related to sequela of chronic, healed osteomyelitis.
However, chronic recalcitrant or acute on chronic osteomyelitis are possible.[5]  If
there is concern for osteomyelitis, consider 3 phase bone scan or tagged white blood
cell scan.  MRI would be less sensitive given the adjacent metallic structures and
IM rod.

*Id.,* pp. 162, 173.  In his second reply, Watkins states that when he returned from the hospital, he

informed the nurse that he was having leg pain, asked when he would be seen for the extensive

new bone growth, and was "concerned about what degree of osteomyelitis he has."  ECF 18, p. 5.

The nurse allegedly said that "If you had osteomyelitis, you would be dead."  *Id.*  Watkins claims

that a recommended follow-up appointment with Dr. Ben Oteyza, a surgeon, was cancelled.  *Id.*

Watkins also asserts that his complaints of pain are not reflected in certain "falsified" records.

ECF No. 18, pp. 5–6, 8–9.

Watkins has been seen by medical practitioners on many occasions for complaints of pain

and other concerns.  On March 11, 2019, he was seen for chronic pain to his right leg extremity

that flares up with squats/exercises, during the day, and is often unrelieved with his current dose

of medication.  ECF 15-1, pp. 11–15.  Watkins was advised to avoid squats and perform

cardiovascular exercises; educated on additional measures, including relaxation and stretching;

and instructed to continue his medications.  His Elavil prescription was increased to treat the

daytime pain he was experiencing with activity.  *Id.*, p. 11.  The medical provider reported

observing no mass, no severe deformity, and no abnormal findings.  Though Watkins described

his right leg as painful with squats and strenuous exercises, the pain was relieved with rest and

elevation.  *Id.*, p. 12.

---

[5] Osteomyelitis is inflammation of the bone caused by an infection.  The infection may originate in the bone from an injury.  *See* Osteomyelitis, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/osteomyelitis (accessed June 10, 2020).

On April 20, 2019, Watkins was seen by a medical provider for right thigh pain.  He told the nurse that he "was shot in the thigh and I have pain all the time."  ECF 15-1, p. 19.  Watkins stated he was allergic to ibuprofen and declined acetaminophen or other nursing protocol interventions.  He walked back to his housing unit without assistance and showed no acute distress. *Id*.

On May 7, 2019, Watkins was seen for swollen legs.  ECF 15-1, p. 35.  Kelly Bickford, R.N., observed "trace non-pitting edema."  Watkins reported that he notices the swelling during the day and it goes away.  He walked without problem and no acute distress was noted.  It was recommended that he improve his hydration.  *Id*., p. 35.

On May 28, 2019, Watkins was seen for complaints of pain in his right hip and leg and other areas after he was thrown from his seat when the van he was riding in swerved.  He was given Tylenol and told to return to medical for additional evaluation.  ECF 15-1, p. 61.

On June 13, 2019, Watkins was seen for reports of fluid-filled legs and constant pain.  It was noted that he walked without difficulty.  Watkins agreed that the swelling had decreased.  ECF 15-1, p. 66–67.  He was scheduled to be seen by a medical provider in the chronic care clinic.  *Id.*

On June 18, 2019, Watkins was seen in the chronic care clinic for concerns, including pain management.  He was diagnosed with chronic pain syndrome, prescribed Baclofen and Elavil for pain management, and the medical provider discussed with him his expectations for pain management.  *Id*., pp. 68, 70–71.

On July 5, 2019,[6] Bruce Ford, PA, met with Watkins for his right leg concerns.  Ford wrote:

---

[6] The defendants' response cites to a medical visit not part of the record.  The response provides that on July 3, 2019, Watkins reported that the pain in his legs was an "8 or 9 out of 10," and that he stated "I'm not being treated properly.  I have x-ray results from 2018 that said I have chronic osteomyelitis.  I can't workout or even pray some days because of the pain.  I need proper treatment, and I'm not getting it."  ECF 15, p. 5.  It was noted that when Watkins was seen in the chronic care clinic five days prior, his pain was addressed and he "ambulated without issue or limp; sat and stood without difficulty."  *Id.*  He was advised to place a sick call request if his symptoms did not

> Patient reports being shot multiple times, 2015 - treated at Johns Hopkins, new minor injureis [sic] since then, was sent out 9/2018 for PREA issue - x-ray was performed on the right femur - indicated extensive new bone formation over previous traumatic region, may be related to sequela of chronic healed osteomyelitis rule out recalcitrant or acute on chronic osteomyelitis - patient reports increase pain - will order new x-rays and follow up at a later date, gait normal, no distress noted on exam ?

*Id.*, p. 73.  Ford ordered the x-ray of Watkins's femur the same day.  *Id*., p. 72.

On July 26, 2019, Watkins was seen for a follow-up visit for repeat x-rays of his right leg. It was noted that the ordered x-ray had not yet been performed, and that "Patient requested neurontin and lyrica, discussed in great detail, patient has unrealistic expectations of pain control, will order trial period of cymbalta and stop the elavil at this time after a great deal of discussion with little agreement."  ECF 15-1, p. 79.

On August 23, 2019, Watkins was seen for his complaints of osteomyelitis with tremendous pain.  He reported that Cymbalta was ineffective for relieving his pain.  The medical provider observed Watkins walked without difficulty.  ECF 15-1, p. 83.

On September 26, 2019, Jason Clem, M.D., noted that Watkins's August 28, 2019, x-ray results were "stable and no new findings."  ECF 15-1, p. 118.

On October 16, 2019, Watkins presented complaints of pain and swelling in both legs and that his pain medication was not working.  ECF 15-1, pp. 139–140.

On November 15, 2019, Watkins asked to renew his Elavil prescription and reported that his legs hurt.  He was scheduled for a chronic care consultation.  ECF 15-1, p. 148.

On December 14, 2019, Watkins was seen for body, knee, legs, and back pain.  The medical record reflects his walk was steady and he reported no pain with movement.  He refused Motrin. ECF 15-1, pp. 150–153.

---

improve or worsened, and he was referred to a provider for further evaluation.  *Id*.  The medical record for this date was not filed.  *See* ECF 15-1.

On December 17, 2019, Watkins was seen in the chronic care clinic.  The medical record

from that visit reads in pertinent part:

> [C]hronic pain s/p multiple GSW with many questions regarding . . . Meritus visit
> and summary report from 10/02/18 "I have a copy of report as well as MRI and is
> that related to the scar on my lower leg".  Explained to him the report involves his
> femur [n]ot his right lower leg scar that he reports he has noticed over the past year.
> Did offer him the option of a biopsy of the area which he reported he would consider
> so referred to our PA who does biopsy at this site.  Will also obtain baseline labs
> which he can have reviewed at next [follow-up] appointment with provider.  Pt
> reports compliance with meds, relieved with current regimen.

ECF 15-1, p. 154.  The record does not state whether the biopsy was performed or its

results.

On December 30, 2019, Watkins reported that his pain has become uncontrolled since his

Elavil had run out.  ECF 15-1, p. 158.

## DISCUSSION

### I.      Motion to Appoint Counsel

Watkins asserts that he needs counsel to represent him because the issues in this case are

complex, he has no access to the law library due to his confinement in segregation, he has limited

knowledge of the law, and his attempts to secure legal representation have been unsuccessful.  He

also anticipates counsel will be needed to conduct discovery, investigate his case, and represent

him at trial.  ECF 14, 14-2.

A federal district court judge's power to appoint counsel pursuant to 28 U.S.C. § 1915(e)(1)

is discretionary and may be considered where an indigent claimant presents exceptional

circumstances.  *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975).  There is no absolute right

to appointment of counsel; an indigent claimant must present "exceptional circumstances."  *See

Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987).  Exceptional circumstances exist where a

"pro se litigant has a colorable claim but lacks the capacity to present it."  *See Whisenant v. Yuam*,

739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct*., 490

U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment

of counsel).   Exceptional circumstances include a litigant who "is barely able to read or write,"

*Whisenant*, 739 F.2d at 162, or clearly "has a colorable claim but lacks the capacity to present it,"

*Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008) (citation omitted).   Upon careful

consideration of the motions and previous filings by Watkins, the court finds that he has

demonstrated the ability to articulate the legal and factual basis of his claims himself or secure

meaningful assistance in doing so.    No exceptional circumstances exist that warrant the

appointment of an attorney to represent Watkins under § 1915(e)(1).

## II.      Motion for Temporary Restraining Order/Preliminary Injunction

Emergency injunctive relief is "'an extraordinary remedy that may only be awarded upon

a clear showing that the plaintiff is entitled to relief.'"   *Dewhurst v. Cnty. Aluminum Co*., 649 F.3d

287, 290 (4th Cir. 2011) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22

(2008)).   "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed

on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

the balance of equities tips in his favor, and that an injunction is in the public interest."   *Winter,*

555 U.S. at 20 (citations omitted).   A plaintiff must satisfy all four of these requirements.   *See*

*Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013).   "The standard for a temporary restraining

order is the same as a preliminary injunction."   *Maages Auditorium v. Prince George's Cty*., *Md*.,

4 F. Supp. 3d 752, 760 n.1 (D. Md. 2014), *aff'd*, 681 F. App'x 256 (4th Cir. 2017); *see* Fed. R.

Civ. P. 65.

In his first reply, Watkins argued that he needed all 814 pages of his medical records in

order to answer the response. ECF 16, p. 3.   Though Watkins did not explain with specificity his

7

need for his entire medical file, on April 16, 2020, "in light of the Court-recognized state of emergency declared in Maryland due to the spread of novel corona virus known as COVID-19 and in the spirit of cooperation," defense counsel sent 813 pages of Watkins's medical file to him. ECF 17; ECF 15, p. 2 n.3.[7]  In his second reply, Watkins argues that he is likely to succeed on the merits of his Eighth Amendment claim, he is likely to suffer irreparable harm in the absence of relief, the balance of the equities tips in his favor, and the relief sought will serve the public interest. (ECF 18, pp. 19–24).

The Eighth Amendment to the Constitution prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  An official is liable under the Eighth Amendment if he acts with "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To satisfy the deliberate indifference standard, a plaintiff must demonstrate (1) that the alleged deprivation is, objectively, sufficiently serious, and (2) that subjectively, the prison official acted with a sufficiently culpable state of mind.  *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citations omitted).

An official violates the Eighth Amendment by exposing an inmate to conditions that pose "a substantial risk of serious harm" to their health.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted).  A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks, ellipses, and citation omitted).  The subjective component of an Eighth Amendment claim requires "subjective recklessness" in the face of the serious medical condition.

---

[7] The court has not requested these records, nor were they provided to the court.

*See Farmer*, 511 U.S. at 839–40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *accord Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 307 (4th Cir. 2004).

The record evidence shows that Roxbury Correctional Institute medical providers were aware of the recommendations made at Meritus, and prescribed medications to treat Watkins's leg pain and swelling.  Although x-rays were performed, the record does not show recommended scans or other diagnostic efforts were done to investigate osteomyelitis or the extensive new bone formation as a possible cause of Watkins's ongoing complaints of leg pain, or why such investigations were ruled out.  In light of the record before this court thus far, it cannot be determined whether Watkins is likely to show that the defendants acted with deliberate indifference to his serious medical need.  The court will require counsel to provide a report within twenty-eight days that (1) addresses whether the biopsy referenced above was performed, and if so, its results, and (2) answers Watkins's allegations that the scans recommended at Meritus are needed to diagnose the cause of his leg pain and swelling.

To show irreparable harm, a prisoner must show the harm to be "neither remote nor speculative, but actual and imminent."  *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).  Watkins asserts that if he does not receive proper treatment, he may never walk again normally or "even die or need amputation of his right leg." ECF 5, p. 3; ECF 18, p. 23.  Watkins's medical records document his history of chronic leg pain, for which he has received x-rays, pain management, and medical evaluations.  He provides no evidence he is in danger of imminent death or losing his leg to amputation.

As Watkins does not show a risk of irreparable harm, he does not satisfy the requirements for issuance of preliminary injunctive relief, and his motion will be denied without prejudice.  The court, however, is concerned that the recommendations made pursuant to Watkins 2018 x-ray at Meritus—the gravamen of this motion for injunctive relief—was not addressed in the response. Accordingly, counsel will provide within twenty-eight days a report explaining whether the biopsy of the leg was taken, its results, and any other efforts, including diagnostic tests, that are being taken to address concerns of osteomyelitis or the extensive new bone formation indicated in the 2018 x-ray impression.

## CONCLUSION

For the foregoing reasons, the motion for a preliminary injunction and temporary restraining order will be denied without prejudice. The motion for appointment of counsel will be denied without prejudice. Counsel shall file a report in twenty-eight days as above directed. Service shall proceed on the defendants named in the complaint.  A separate order follows.


  6/15/20                                         /S/
Date                                    Catherine C. Blake
                                        United States District Judge