# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NAFIZ WATKINS, | * | |
| Plaintiff | * | |
| v | * | Civil Action  CCB-20-208 |
| BALTIMORE CITY, *et al.* | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM OPINION

Pending in response to self-represented plaintiff Nafiz Watkins's complaint (ECF 1), are (1) the State Defendants[1] Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF 53); (2) Ronald Crawford, Kemar Hines, Gerald Solomon, and Davon Telp's Motion to Dismiss (ECF 67); and (3) Oluyemi Abiodun, M.D., and Wexford Health Sources, Inc's ("Wexford") Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF 79). Also pending are Watkins's third Motion to Amend the Complaint (ECF 84), which defendants Dr. Abiodun and Wexford and State Defendants oppose (ECF 85, 86), and defendants Crawford, Hines, Solomon, and Telp move to strike (ECF 87).

For reasons discussed below, Watkins's third Motion to Amend the Complaint will be granted. The defendants' motions to Dismiss or for Summary Judgment will be denied without prejudice. The Motion to Strike will be denied. Watkins's Motions for Extensions of Time (ECF 90, 92, 93) to respond to the defendants' dispositive motions will be denied as moot. Watkins's

---

[1] The State Defendants named in the initial complaint are Steven T. Moyer, former Secretary of the Department of Public Safety and Correctional Services (DPSCS), Robert Green, Secretary of DPSCS, Michael Resnick, Commissioner of Pretrial Detention and Services ("DPDS"), Dionne Randolph, former Acting Warden of Baltimore City Booking and Intake Center ("BCBIC"), Tyrell Wilson, former Acting Assistant Warden of BCBIC for Security, Hearing Officer Thomas Williams, Correctional Sergeant Shawanda Jackson, Correctional Lieutenant Fatima Patterson, and Correctional Officers Iesha Butler and Ellice Hall. ECF 53, 86.

motion to file a fourth amended complaint (ECF 97) and his motion for default (ECF 98) will be denied.

## I.     BACKGROUND

Watkins initiated this action on January 23, 2020, by filing a complaint against 22 defendants.[2] The complaint alleged that Watkins was subjected to excessive force on December 2, 2017, at the Baltimore City Booking and Intake Center ("BCBIC"), unlawful retaliation, and constitutionally inadequate medical care. ECF 1. On January 29, 2020, Watkins filed a motion for a temporary restraining order and preliminary injunction ("TRO"), alleging denial of appropriate medical care for injury to his right femur, which the court denied on June 15, 2020. ECF 5, 21.

### A. Motions to Amend the Complaint

Watkins subsequently filed two motions to amend the complaint. ECF 52, 64. On September 8, 2020, Watkins filed a 62-page motion to amend the complaint, in which he named more than 35 defendants and added new medical and excessive force claims unrelated to the initial complaint. ECF 52. On September 8, 2020, the State Defendants filed their Motion to Dismiss or, in the Alternative, for Summary Judgment in response to the initial complaint. ECF 53. Before the court ruled on the first motion to amend, Watkins filed a second motion to amend the complaint, which consisted of 84 pages and alleged numerous unrelated incidents involving more than 55 different defendants at different correctional institutions. ECF 64.

---

[2] Service of process, initially accepted by the Office of the Attorney General on behalf of Officer Bobby Allen, was accepted in error. ECF 27, 28, 71, 76. A subsequent attempt to serve Allen by mail at his last known home address was unsuccessful. ECF 76, 88. The court will direct the U.S. Marshal to arrange for personal service to Allen's last known address.

On November 23, 2020, the court denied Watkins's first and second motions to amend the complaint without prejudice. He was granted twenty-eight days to file an amended complaint stating the names of all defendants and presenting his claims. ECF 65.

No amended complaint was received within the prescribed twenty-eight days. Instead, on December 23, 2020, Watkins filed a motion for an extension of time that acknowledged he had received the court's November 23, 2020 order, declared under penalty of perjury that on December 9, 2020 he mailed a motion for leave to file an amended complaint, and was awaiting the court's ruling on the motion. ECF 72. On January 11, 2021, the court granted the motion for extension of time, enlarging the time for Watkins to file an amended complaint to January 22, 2021. Watkins was cautioned that no additional extensions would be granted absent extraordinary circumstances. ECF 76.

On January 26, 2021, Wexford and Dr. Abiodun, filed a motion to dismiss or, in the alternative, motion for summary judgment limited to the original complaint. ECF 79.

On January 29, 2021, Watkins filed another motion for an extension of time to file the amended complaint. ECF 81. Reiterating that he had mailed the motion to file an amended complaint on December 9, 2020, he explained that he had "no control over his documents that he mails to this court once he places them in the prison's mailbox" and had "no idea when his already mailed amended complaint will be filed or whether he will have to submit another one because of some issue with the mail delivery service." *Id.* He requested an extension until February 7, 2021. *Id.* On February 1, 2021, the court granted the motion and extended the time to file the amended complaint to February 8, 2021.[3] ECF 83.

---

[3] February 7, 2021, fell on a Sunday.

On February 5, 2021, the Clerk received Watkins's third proposed amended complaint, which was signed and dated January 25, 2021.[4] ECF  84. The third amended complaint names more than fifty defendants, excluding John and Jane Doe defendants, and in many parts closely resembles or is identical to his second amended complaint.  Watkins explains that since filing the original complaint, he has received materials and information that provide "more facts, claims, and identities of some of the original "unknown' defendants." ECF 84.

Defendants oppose the third motion to amend the complaint as untimely and prejudicial. ECF 85, 86.  Wexford and Dr. Abiodun posit "it is plain" that the court granted Watkins an extension until January 22, 2021, "based on his suggestion that he had filed a timely new amended complaint" and it is "now clear" that he "had not filed an amended complaint on December 9, 2020, and waited until January 25, 2021, to file an amended complaint." ECF 85 at 3.  They argue that the third amended complaint "is virtually identical to the second and fails to comply with Rule 8 of the Federal Rules of Civil Procedure." *Id.* at 4. Lastly, they argue that they are entitled to a timely decision on the original complaint pursuant to court order and that accepting the third amended complaint would entail addressing unrelated claims against many new individual defendants. *Id.* The State Defendants assert the proposed amended complaint fails to comply with Rule 8(a) of the Federal Rules of Civil Procedure, is "confusing, protracted, and vague" and does "little more than name-check many of the people, institutions, institutional supervisors, physicians or other medical providers, and organizations" who "had some sort of contact" with Watkins. ECF 86 at 4.

---

[4] It is unclear whether this is an identical copy of the third amended complaint Watkins states he deposited in the prison mail system on December 9, 2020. *See* ECF 97.  Watkins proposed fourth amended complaint is signed and dated December 9, 2020. ECF 97.

On March 9, 2021, Watkins filed two identical motions to extend the time to respond to Wexford and Dr. Abiodun's motion to dismiss or, in the alternative, for summary judgment as to the original complaint. ECF 92, 93. Watkins explains as a basis for the motions that he did not receive the medical records referenced in the dispositive motion and was unable to respond. *Id.*

On March 19, 2021, Watkins filed a fourth motion for leave to amend the complaint, this one signed and dated December 9, 2020. ECF 97; ECF 97-1 at 1. The proposed fourth amended complaint is virtually identical to the third amended complaint. Accordingly, to the extent Watkins seeks to file a proposed fourth amended complaint, that motion will be denied without prejudice.

Watkins has provided a verified account of his efforts to file a timely amended complaint in response to the court's order, stating under penalty of perjury that he mailed the amended complaint on December 9, 2020. ECF 77 at 3; ECF 94 at 4. He explains that he has "no control over his documents that he mails to this court once he places them in the prison's mailbox." *Id.* Due to mail delays, Watkins sought and was granted extensions to file the third amended complaint. *See* ECF 72. Watkins has previously alleged interference with his prison mail and is "currently litigating the mail interference claim through the Administrative Remedy Process." ECF 94 at 3; *see also* ECF 77 at 2,56. Further, his multiple requests for extensions to respond to defendants' dispositive motions and his filing of a fourth amended complaint (ECF 97), virtually identical to his third complaint (ECF 84), tend to corroborate his expressed concerns about timely and reliable prison mail delivery. Defendants too have alluded to prison mail processing delays in this case. Specifically, Wexford and Dr. Abiodun, by their counsel, in moving for an extension of time to respond stated: "In view of the often substantial delays in processing prison mail,

Defendants request an extension of time in which the latest amended complaint may be received and can respond to that new complaint." ECF 74 at 1, 94 at 5.[5]

The court recognizes that, although the third proposed motion is long and repetitive, Watkins is a self-represented litigant whose pleadings this court is obliged to accord liberal interpretation, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, he has requested but not had the opportunity for discovery, and he indicates the proposed amended complaint reflects his receipt of additional documents. (ECF 64-2, ECF 77). Accordingly, the court will accept the proposed Third Amended Complaint (hereinafter the "Amended Complaint") to serve as the operative complaint. Many of the allegations, however, must be dismissed as explained below.

### B. Allegations in the Third Amended Complaint (ECF 84)

The verified Amended Complaint[6] alleges that: (1) Watkins was charged with "trumped-up" prison rule violations in retaliation for filing an earlier federal lawsuit complaining he was housed near the same man who had attempted to murder him in 2015 and against whom Watkins was testifying at trial[7] (ECF 84 at 8); (2) on November 20, 2017, Watkins was improperly secured and injured in a transport van; (3) on December 2, 2017, Watkins, who at the time was a pretrial detainee (ECF 1 at 8), was assaulted at the Baltimore City Booking and Intake Center ("BCBIC") by Davon Telp, Ronald Crawford, Bobby Allen, Gerald Solomon, Kemar Hines, and a John Doe

---

[5] The court notes that conditions posed by the COVID-19 pandemic may have contributed to delay or disruption of mail.

[6] "[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (emphasis in original). "A complaint is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.' " *Goodman v. Diggs*, 986 F.3d 493, 495 n.2 (4th Cir. 2021).

[7] In *Watkins v. State of Maryland*, Civil Action CCB-17-2893 (D. Md. 2018) (dismissed with prejudice), Watkins sued correctional officers at the Metropolitan Transitional Center, claiming they failed to protect him from injury from a fellow inmate. *Id.* ECF 1 at 2; ECF 29-2 at 19. On July 17, 2018, the court dismissed the claims against defendants with prejudice. None of the defendants in Civil Action CCB-17-2893, is a defendant in the instant case. *See infra* pp. 23-24.

Correctional Officer whose last name Watkins believes to be Butler (ECF 84-1 at 11); (4) Watkins

received inadequate medical care for the leg injury he sustained on December 2, 2017; and (5) his

cell at BCBIC was unsanitary (ECF 84-1 at 10), thereby violating his rights under the First, Eighth,

and Fourteenth Amendments, the Americans with Disabilities Act, the Rehabilitation Act, and

Maryland law. [8] ECF 84-1. He requests an award of damages and declaratory and injunctive relief.

*Id.* at 38-39.

### 1. Retaliation

On October 19, 2017, Watkins was detained at BCBIC following arrest. Shortly after, he sent

a letter to this court from BCBIC regarding his recently filed lawsuit, *Watkins v. State of Maryland*,

Civil Action CCB-17-2893 (D. Md. 2018).[9] Watkins alleges that on October 30, 2017, he

"suspiciously received" an infraction charging him with threatening Officer Iesha Butler. Watkins

characterizes the charges as "false and trumped-up." ECF 84-1 at 8.

Correctional staff members Norman Hawkins and Fatima Patterson served Watkins with the

Notice of Inmate Rule violation. Watkins asked for the video surveillance recording, in addition

to the names and the cell numbers of witnesses he wanted to call at the hearing. Patterson and

Hawkins replied that he would have an opportunity to call witnesses, but Watkins contends that

he was not given a chance to do so. *Id.* at 9. When Patterson and Hawkins moved Watkins to

---

[8] Watkins generally claims various defendants have committed negligence, gross negligence, malpractice and intentional infliction of emotional distress. ECF 84-1 at 31-38. These summary and conclusory allegations are insufficient to state a cause of action and will be dismissed without prejudice. Watkins's claims of assault and battery against defendants Telp, Crawford, Hines, Allen, Solomon, and the John Doe officer whose last name Watkins believes to be Butler will proceed. *Id.* at 22.

[9] The docket shows that on November 13, 2017, Watkins filed correspondence notifying the court of a change of address to 300 East Madison Street, [Baltimore, MD]. This is the address for the Baltimore City Booking and Intake Center (BCBIC). On December 18, 2017, he filed another notice of change of address and requested complaint forms. The second letter was sent from "MRD," 550 East Madison Street, Baltimore, MD, the address for the Maryland Reception, Diagnostic, and Classification Center. *Watkins v. State of Maryland*, CCB-17-2893, ECF 4, 6, 6-1.

administrative segregation housing pending a formal hearing, he refused the placement and informed Patterson that he saw his enemies, family members of the man who had shot him. Patterson became irate and yelled at Watkins saying, "your little punk ass is lying and you are going in that cell either willingly or by force. " *Id.* Watkins asked the officers to call Captain Giles in the Internal Investigation Unit, to verify his concerns. The officers inquired further and then moved Watkins to a different floor although, according to Watkins, "they were not happy about it." *Id.* at 8.

Watkins alleges that on November 23, 2017, he was issued a "trumped up false charge" for engaging in a disruptive act by pointing at Sergeant Atikpoh and making a firing sound. *Id.* at 9. Officer Gerald Solomon and another officer served the Notice of Rule violation. Watkins was placed in administrative segregation pending hearing based on the two pending infractions. *Id.* at 9. [10] The charge of engaging in a disruptive act (for pointing at Sergeant Atikpoh and making a firing sound) was later dismissed and reduced to a reprimand. *Id.* at 9, 19

On December 7, 2017, Hearing Officer Thomas Williams presided over Watkins's adjustment hearing for the incident with Iesha Butler. Watkins moved for dismissal of the charges because the matter was not heard within 9 days. Williams denied the request based on his determination that the delay was harmless. Watkins informed Williams that: the charges against him were retaliatory; he had never received an Inmate Handbook; and Williams had presided over Watkins's disciplinary hearing for fighting another inmate, Lester Asche. Watkins alleges the Institutional Representative interrupted Watkins, stating "that aint nothing to tell anyone, that you is a snitch." *Id.* at 15. Watkins asked Williams for the camera footage and to call witnesses and his requests were denied. Watkins denied threatening the officer and asserts that without the evidence he had

---

[10] Watkins earlier indicated that he was placed in administrative segregation when he was issued the first infraction. *Supra* p. 8

requested, he did not receive a fair hearing. Watkins denies becoming belligerent or disrespectful during the hearing. Hearing Officer Williams held the hearing in absentia, found him guilty of the incident and sentenced him to 100 days of segregation.[11] *Id.* at 15; *see also* Offender Case Management Hearing Record ECF 53-2 at 3 (stating Watkins became "belligerent" during the hearing and the case was held in absentia).

After the hearing, Watkins attempted to get the attention of an unidentified lieutenant. The Jane Doe Institutional Representative and another officer allegedly knocked Watson to the ground and dragged him into the elevator. When the elevator reached the next floor, Watkins was thrown off the elevator, and his cane was thrown at him. He remained sitting on the floor asking to see a supervisor because he wanted to "press charges." *Id.* at 15. Watkins informed "a major" about the Institutional Representative's action, his desire to press charges, and that he wanted to be taken to the medical unit. Watkins was taken to the medical unit, but no charges were filed. *Id.* at 15-16.

Watkins appealed the hearing officer's guilty finding to BCBIC Acting Warden Randolph but received no response. Randolph determined she had received no appeal and confirmed the convictions. *Id.*

### 2. Conditions of Confinement

Watkins complains that he was placed in cell 36 where the grate was welded to the wall, there were metal shavings around the window and his bed, and dust and mold blocked ventilation. *Id.* at 10. Watkins alerted Officers Thomas and Hall about the conditions when he was first assigned to the cell and they told him to stop complaining. *Id.* at 10. Watkins alleges that on November 30,

---

[11] Watkins was a pretrial detainee at the time. The amended complaint does not allege whether he was faced with a possible loss of good conduct credits to trigger due process protections. *Wolff v. McDonnell*, 418 U.S. 539, 563-64 (1974).

2017, he was taken to the medical unit for breathing complications and chest pains he attributes to "being exposed to the unsanitary conditions of my cell." *Id.* at 10. Watkins, who has asthma, was given a nebulizer treatment, and prescribed additional treatments as needed from November 30, 2017 through December 30, 2017. *Id.* According to Watkins, medical providers suggested transferring him to a dormitory setting, but custody staff rejected the idea due to his pending infractions. *Id.*

On December 2, 2017, Watkins requested to go to medical after recreation because, due to the unsanitary conditions, he was having trouble breathing, his nasal spray did not help, he was prescribed nebulizer treatments as needed, and he was having chest pains. Tier officer Ellice Hall told Watkins to stop complaining and lock into his cell. *Id.* at 10-11.

Watkins filed "a number of grievances" with the Residential Grievance Office about the unsanitary conditions of his cell. The grievances listed the Warden and others as liable for damages. *Id.* at 10.

### 3. Van Transport Incident

On November 20, 2017, Watkins was driven from a court appearance back to BCBIC unsecured by a seat belt. He claims Officer Powell drove recklessly and, when the van turned into the BCBIC sallyport, the stepping stool "smacked his leg, lodged itself against his leg, and the whole second row seat collapsed on his legs with inmates sitting on it". He then had to wait waited 10-15 minutes while the van was cleared to enter BCBIC and the officers secured their firearms. *Id.* at 8-9. Powell then lifted the seat off Watkins and took him to the medical unit. *Id.* at 9. The following day, November 20, 2017, Watkins filed a grievance with the Residential Grievance Office about the incident. *Id.* On December 5, 2017, the Residential Grievance Office informed Watkins that the transportation van incident would be investigated. *Id.* at 14.

10

On December 8, 2017, Watkins was transferred to the Maryland Reception, Diagnostic and Classification Center ("MRDCC") where he was placed on disciplinary segregation. He resubmitted his grievance about the December 2, 2017 staff assault incident and received no response. *Id.* at 18.

### 4. Assault

After recreation on December 2, 2017, Watkins asked to go to medical because he was having chest pains and trouble breathing, symptoms he blamed on the conditions of his cell. ECF 84-1 at 10. Officer Ellice Hall directed him to lock into his cell, and refused to send him to medical, even though Watkins told Hall that he was prescribed nebulizer treatments on an as needed basis. *Id.* Sergeant Shawanda Jackson responded to his request to speak to a supervisor. After Jackson denied his request to go to medical, Watkins asked Jackson to speak to her supervisor. Jackson replied, "I am all you will see. I ain't calling anyone." *Id.* at 11. Jackson threatened to use mace if Watkins did not lock into his cell. *Id.* Watkins persisted, asking to speak to her supervisor. Jackson called Davon Telp, Ronald Crawford, Bobby Allen, Gerald Solomon, Kemar Hines and another officer (who Watkins believes has the last name Butler), members of the emergency response team team/tactical unit. These officers "forcibly grabbed" Watkins, lifted him, and carried him into his cell. While Watkins's arms were restrained one of the officers came from behind him and kicked Watkins in his right thigh, reinjuring a 2015 injury to his femur. *Id.* at 11, 23; *see also* ECF 15-1 at 11, 19.

Watkins showed Telp, Crawford, Allen, Solomon, Hines, and the John Doe officer how the kick disfigured his leg. He asserts the bone or rod in his femur was protruding and clearly visible. Watkins told them he could barely walk. The officers refused to take him to medical and left the

cell. Watkins called Hall and Jackson, showed them his leg, told them he was in pain and could not walk, and asked to be sent to medical, but they refused. *Id.* 12.

Watkins filed a grievance based on the December 2, 2017 incident. On December 5, 2017, the Residential Grievance Office dismissed the grievance pending resubmission with additional information by December 12, 2017. *Id.* at 14.

### 5. Medical Care

At approximately 6:00 p.m. on December 2, 2017, Watkins had a "panic/asthma attack" and was taken by wheelchair to the medical unit where he was seen by Dr. Oluyemi Abiodun. Watkins asked to be seen for his leg as well and Abiodun told him to choose: he could be seen for the panic/asthma attack or his leg. *Id.* at 12-13. Watkins chose to have his leg evaluated because he was barely able to walk. Abiodun ordered an x-ray of the right femur, prescribed a cane, increased Watkins's pain medication and added a "narcotic medication." *Id.*

Watkins claims that Abiodun "falsified his medical record" to show his blood pressure was low[12] when it was extremely high, and indicated the physical exam revealed a right thigh deformity likely consistent with a prior rod placement, while ignoring the tenderness around Watkins's femur. *Id.* at 13. He informed Abiodun that no previous x-ray or medical record since 2015 when the rod was first implanted showed such deformity. *Id.* He faults Abiodun for not transferring him to an emergency room for proper diagnosis and evaluation. Watkins returned to his housing

---

[12] Consideration of Watkins's medical claim will be limited to the alleged reinjury of his femur/leg. To the extent he intends to present claims about his medical care for hypertension (ECF 84-1 at 18, 26, 29, 30) or care after he was assaulted with a sock filled with wet paint on September 24, 2019, (*Id.* at 29-30), he may pursue the claims in separate complaints. The Clerk will send a blank complaint form to him in in the event he wishes to pursue such claims. Because Watkins's claims against Marie Desir and Paul Matera, the dispensary nurses at Eastern Correctional Institution (ECI), arise from medical matters unrelated to the injury of his leg, they will be dismissed without prejudice. ECF 84-1 at 25-26, 29. Watkins raises no specific claims against nurse practitioner Deborah Tabulov and Dr. Maksed Choudry, who will be dismissed as parties to this action. *Id.* at 6, 37, 38.

unit without a cane or assistive device for walking. He asserts that he had to walk to the medical unit twice a day for his medication in pain so excruciating that he contemplated suicide.[13]  *Id.* at 13.

On December 3, 2017, Abiodun discontinued Watkins's gabapentin prescription due to "policy" and prescribed Elavil instead. *Id.* 13-14. Abiodun informed Watkins that he had specially ordered a cane for him proportionate to his height and weight and was awaiting its delivery. When Watkins asked for an alternative such as a wheelchair, Abiodun told him nothing was available. *Id.*

On December 5, 2017, radiologist Sudhir Kathuria reported a "residual deformity" on Watkins's right femur. *Id.* at 14. On December 7, 2017, Dr. Khalid El-Bedawi continued Watkins's narcotic medication, and requested an outside medical orthopedic evaluation. Watkins states "[p]resumably this request was denied because I never received the care." *Id.* at 18.

On December 22, 2017, Dr. Molugeta Akal examined Watkins's right leg, and requested an orthopedic evaluation. Akal did not renew Watkins "narcotic medication" and prescribed Baclofen and Elavil for pain. On January 5 and 8, 2018, Watkins filed sick call slips for complaints of leg pain. *Id.*

On January 12, 2018, Watkins told Akal that his pain medications were ineffective. Akal suggested physical therapy and informed him the orthopedic consultation had been denied. Watkins contends Akal did not submit the physical therapy request. *Id.* at 18.

On February 23, 2018, Watkins complained of leg pain. Akal did not change Watkins's pain medication and threatened to take away his cane if he continued to complain about pain and his need for physical therapy and orthopedic care. *Id.* at 19.

---

[13]  Watkins does not allege he attempted suicide.

On April 30. 2018, Watkins was transferred to Maryland Correctional Institution-Hagerstown (MCI-H) where he was placed on disciplinary segregation for reasons unrelated to this complaint. *Id.* Watkins, who appears to have still been a pre-trial detainee at this point, states:

> When my sentence expired in the beginning of July, I was told that per the Commissioner I was to remain at MCI-H on Administrative Segregation as a pre-trial inmate. When I asked why, Case Manager Mason stated "This must be for all that trouble you caused down the road." Every month I was seen to review my placement on Administrative Segregation. Every month I was told there would be no change and that I would remain on administrative segregation until I either go home or receive a sentence.

*Id.* at 20.

On May 2, 2018, Watkins submitted a sick call request because his pain medications had expired. On May 4, 2018, he was seen by a sick call nurse who referred him to a provider. On May 22, 2018, he complained to Dr. Olufemi Olawale about leg pain and ineffective pain medication. Olawale recommended that he learn to cope with the pain and did not recommend him to orthopedics or change his medication. *Id.*

On June 26, 2018, Watkins complained of worsening pain. Olawale increased Watkins's Baclofen dosage for 2 months. Olawale informed him this would be the last increase in the medication. Watkins faults Olawale for not requesting an orthopedic consultation.

On August 14, 2018, Watkins told nurse practitioner Munjanja Litell about his leg pain, but Litell refused to address his worsening pain, examine his right leg, or to refer him to an orthopedist. *Id.*

On September 7, 2018, Watkins presented complaints of worsening pain to Lum Maximuangu. The medical report notes Watkins's knees were tender and he exhibited pain with motion. Watkins faults Maximuangu for refusing to order diagnostic tests or refer him to an orthopedist. *Id.* at 21

14

On September 21, 2018, Watkins was taken to Meritus Medical Center after he reported an alleged assault pursuant to PREA (Prison Rape Elimination Act, 42 U.S.C. § 15601, *et seq.*). Radiologist Candice R. Crist ordered x-rays of his right femur in response to his stated concerns of chronic right leg pain. The x-ray impression was:

> There is no acute fracture. Patient is status post fracture repair of the femur with prior gunshot or shrapnel. Extensive new bone formation is seen over the previous traumatic region. This may be related to sequela of chronic, healed osteomyelitis. However chronic recalcitrant or acute on [sic] chronic osteomyelitis are possible. If there is concern for osteomyelitis consider 3 phase bone scan or tagged white blood cell scan. MRI would be less sensitive given the adjacent metallic structures and IM rod.

ECF 84-1 at 21. Watkins's discharge report recommended that he follow up with his doctor (hereinafter referred to as the Meritus recommendations). Watkins asserts that instead of receiving a 3-phase bone scan or tagged white blood cell scan, he was scheduled for an appointment with surgeon Ben E. Oteyza sometime around September 22, 2018. *Id.* at 21-22.

Kelly Bickford prescribed medications for Watkins's leg pain when he returned from Meritus. Watkins asked when he would be seen for the bone formation shown in his x-ray and his concerns about osteomyelitis. Bickford answered, "If you had osteomyelitis, you would be dead." *Id.* at 22. Watkins claims that Bickford created a false medical record stating that he denied pain or discomfort. He faults Bickford for referring him to a provider for the PREA report but not for his concerns about new bone formation and possible osteomyelitis. *Id.*

On September 22, 2018, physician's assistant Crystal Jamison denied Watkins's request for a cane, telling him that he had walked to the medical unit just fine without one.[14] Watkins contends that he had limped to the medical unit and had arrived exhausted and in pain. Watkins

---

[14] The record does not reflect whether Watkins received the cane earlier ordered by Dr. Akal. *See supra* p. 13.

informed her about his chronic pain and the Meritus recommendations. Jamison told him she was seeing him for PREA follow up and ignored his other concerns. *Id*. at 23.

On September 25, and October 2, October 16, and October 26, 2018, Watkins was seen for PREA follow up. He complained to nurse practitioner Lum Maximuangu of leg pain and informed her of the Meritus recommendations. During the September 25, 2018 visit, he asked for a cane. Maximuangu informed him without explanation that the appointment with Dr. Oteyza had been cancelled. Watkins claims he was "made to leave" the September 25, 2018, visit. Id. at 23, He claims Maximuangu falsified medical records to make it look like he was "okay" when in fact he was in pain. *Id* at 23-24.

On December 18, 2018, Watkins voiced concerns about leg pain and ineffective pain medication, his desire to see an orthopedist, and the Meritus recommendations. Maximuangu adjusted his medicine, suggested he discontinue performing daily pushups and squats, and continue daily cardiac exercise. Maximuangu refused to examine his leg. *Id*. at 25

On April 17, 2019, Watkins submitted a sick call request for worsening leg pain when he stands for long period of time, prays, exercises, stretches, and walks. *Id.*

On May 7, 2019, Watkins was seen by Bickford for swollen legs. She noted symptoms of nonpitting edema. She did not refer him to a provider. *Id.* at 25.

On May 8, 2019, Watkins was transferred to Eastern Correctional Institution where he continued to present concerns about leg pain. *Id*. at 25-26.

On June 13, 2019, Sarah Johnson saw Watkins for swollen leg complaints. Watkins alleges because of delay in being seen, the swelling had decreased. *Id*. at 26. Johnson saw Watkins for leg pain again on July 25, 2019. *Id.* On September 7, 2019, Watkins complained to Johnson that

his pain medication was not working, but she refused "to treat me or even examine me despite my complaints and refuses to refer me to a provider for immediate treatment." *Id.* at 29.

On June 18, 2019, Watkins informed physician's assistant Ruth Campbell about his worsening leg pain, the Meritus recommendations, and his desire to see an orthopedist. *Id.* at 26. Campbell refused to examine his leg. *Id.* at 27-28.

On July 5, 2019, Watkins saw physician's assistant Bruce Ford for right leg pain and pain medication, informed him of the Meritus recommendations, and asked him to rule out chronic recalcitrant and acute chronic osteomyelitis.  Ford ordered new x-rays for Watkins, but did not examine his leg, refer him to an orthopedist, or adjust his pain medications. *Id.*

No x-ray was taken. On July 26, 2019, Ford reordered x-rays.  Watkins expressed concern about worsening leg pain and asked if Neurontin or Lyrica was an option because he was "familiar with these medicines and their effectiveness." *Id.* at 27-28.  Ford prescribed Cymbalta.  Ford advised Watkins that he had "unrealistic expectations of pain control." *Id.* at 28.

On July 29, 2019, Sarah Johnson saw Watkins for pepper spray exposure.  Watkins complained about leg pain and faults her for not referring him to a provider.  When Johnson saw Watkins again on August 23, 2019, he complained of leg pain, ineffective pain medicine, and that his temperature and blood pressure were high.  Johnson did not refer him to a provider. *Id.*  On September 7, 2019, Johnson "refuse[d] to treat me or even examine me despite my complaints and refuses to refer me to a provider for immediate treatment." *Id.* at 29.

On August 28, 2019, Watkins was informed his x-rays showed "sequela of prior fracture s/p or if [sic] intact hardware. No new fractures.  Bullet fragments in the soft tissues." *Id.* at 28.

On August 29, 2019, Warden Walter West dismissed the Administrative Remedy Procedure request (ARP) Watkins submitted on July 21, 2019.  In the ARP, Watkins alleged he

was "receiving adequate[15] medical care" for his condition "yet the recommendations made at Meritus concerning [his] right femur were still not being followed and [he] was still suffering from uncontrolled pain and ineffective pain management." *Id.* at 27, 28. On September 3, 2019, Wayne Hill dismissed Watkins's appeal of Warden West's dismissal of the ARP. *Id.* at 29.

On September 11, 2019, Talmadge Reeves met with Watkins to inform him that the Cymbalta prescribed for pain was stopped because it was ineffective. Watkins faults Reeves for stopping his medication and making no referral to another provider to prescribe an alternative. *Id.* at 29.

On October 31, 2019, Watkins was transferred to Roxbury Correctional Institution. *Id.* at 30.

On November 11, 2019, Watkins submitted a sick call slip for leg pain and to renew his Elavil. He noted "there is a mark on my right leg that keeps scabbing and bleeding." *Id.*

On December 17, 2019, Watkins complained to Dr. Monica Stallworth about his leg pain and informed her the Meritus recommendations were not being followed. *Id.* at 30-31. Stallworth ignored his complaints and renewed his medications. Watkins alleges Stallworth ignored the Meritus recommendations and that Elavil provided ineffective pain relief. *Id.* at 31.

On December 30, 2019, nurse practitioner Munjanja Litell informed Watkins that his medication had been sent to the wrong correctional facility, and she would submit an early refill request form. Watkins received the medication on January 5, 2020. *Id.* at 31.

## II.    Standards of Review

The in forma pauperis statute at 28 U.S.C. § 1915 permits an indigent litigant to commence an action in this court without prepaying the filing fee. To guard against possible abuses of this

---

[15] It is unclear if Watkins's assertion he was receiving "adequate medical care" is deliberate or reflects a typographical error.

privilege, the statute requires the court to screen the complaint and to dismiss any claim that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A (a),(b).

A complaint must contain at a minimum a short and plain statement of the claim that shows the plaintiff is entitled to relief and a request for relief. *See* Fed. R. Civ. Proc. 8(a). Allegations must be "simple, concise, and direct." Fed. R. Civ. Rule 8(d)(1). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action does not satisfy these basic pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The liberal construction accorded to the pleadings of self-represented plaintiffs does not mean that the court can ignore a clear failure to allege facts which set forth a cognizable claim. *See e.g. Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Application of this standard to some of Watkins's claims requires their dismissal.

### III.   Analysis

#### A.   Color of Law Requirement

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). In this

regard, to the extent Watkins seeks to raise a constitutional claim against Candice Crist, a privately-employed radiologist at Meritus (ECF 84-1 at 5), his claim is deficient because he has failed to allege that she was acting under color of state law.[16]

### B. Supervisory Defendants

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be liable under 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). There is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

For supervisory officials, liability under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To state a supervisory liability claim in a § 1983 action, a plaintiff must allege that : (1) "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to...the plaintiff"; (2) "the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "an affirmative causal link between

---

[16] Watkins provides no facts to state a claim against the "Jane Doe Dispensary Nurses at RCI" (ECF 84-1 at 1, 31), and these defendants too will be dismissed.

the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), cert. denied, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

Named as defendants in this case are supervisory officials against whom Watkins alleges no personal participation, claiming instead they are liable based on their supervisory roles: Stephen Moyer, former Secretary of the Department of Public Safety and Correctional Services (DPSCS), Robert Green, Secretary of DPSCS, Michael Resnick, the Commissioner of Pretrial Detention Services, Dionne Randolph, Acting Warden of BCBIC, Tyrell Wilson, Acting Assistant Warden of BCBIC, the "Medical Directors" of BCBIC and MRDCC, Sharon Baucom, Chief Medical Officer of DPSCS, Warden Walter West, former DPSCS Commissioner Wayne Hill, Warden Casey Campbell, Sergeant Bryant, supervisor of the Court Transportation Unit, the Assistant Warden of MCI-H, Jason Clem, Medical Director of ECI, the Deputy Corporate Medical Director. (ECF 84-1 at 1-7). Watkins, however, alleges no facts to show any of these defendants had actual or constructive knowledge of subordinate conduct that posed a "pervasive and unreasonable risk" of constitutional injury to him, or acted with deliberate indifference to this information resulting in constitutional injury. To the extent Watkins faults the supervisory officials who signed his administrative request decisions or appeals, signing an ARP response is insufficient to establish participation because mere receipt and processing of an ARP without more, is not enough to impose liability. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (finding allegation that warden "rubber-stamped" grievances was not enough to establish personal participation).

Additionally, Watkins names Kevin Hickson, supervisor of the emergency response team, as a defendant though he acknowledges that Hickson was not present during the December 2, 2017

21

incident; rather, Watkins claims Hickson is culpable for "regularly allow[ing] his subordinates to assault inmates they believed had cooperated with the Baltimore City Police." ECF 84-1 at 12. Watkins states "[i]t is also believed that some of Kevin Hickson's subordinates would brag on social media about the number of inmate assaults they were criminally committing with reckless disregard for the consequences." *Id.* Watkins asserts the facts on which his earlier complaint in Civil Action CCB-17-2843 was based, "coupled with the fact that, at that time, I was a victim/witness in a pending attempted murder case, led to officials positively confirming that I too cooperated with Baltimore City Police." *Id.* None of the individual defendants[17] in Watkins's earlier case, CCB-17-2843, are defendants in the instant civil action, *see infra* pp. 22-23. and his conclusory allegations are insufficient to show that the supervisory defendants had actual or constructive knowledge of a pervasive and unreasonable risk to him by subordinates to support a claim for supervisory liability.

For these reasons and pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(a),(b), Stephen Moyer, Robert Green, Michael Resnick, Dionne Randolph, Tyrell Wilson, the "Medical Directors" of BCBIC and MRDCC, Sharon Baucom, Walter West, Sergeant Bryant, Wayne Hill, Warden Casey Campbell, the Assistant Warden of MCI-H, Jason Clem, the Deputy Corporate Medical Director, and Kevin Hickson will be dismissed from this case as no viable claim has been stated against them.

### C. Monell Liability

In *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court determined that local governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants, but only if those defendants were executing an

---

[17] Wexford is a defendant in the earlier case. *See Watkins*, Civil Action CCB-17-2843

official policy or custom of the local government that resulted in a violation of the plaintiff's rights. *Id.* at 690-91; *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability attaches "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 384 (1989) (emphasis in original). A municipality may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. *Monell* liability may be extended to private entities operating under color of state law, including private prison health care providers, but only upon showing a policy or custom. *See, e.g., Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999); *Hendrick v. Wexford Health Services, Inc.* 141 F.Supp. 3d 393, 401 (D. Md. 2015); *Burns v. Ashraf*, 2019 WL 4169838 * 8 (D. Md. Sept. 3, 2019).

### 1. Corizon, Wexford, Utilization Management Review Panel, and Correct RX Pharmacy Services, Inc.

Corizon Health (Corizon) and Wexford Health Sources, Inc., are respectively the current and previous contractual health care providers for DPSCS facilities.[18] ECF 84-1 at 1, 4, 5. Watkins's conclusory statements and use of vocabulary associated with a *Monell* claim without facts fails to substantiate the existence of a specific or identifiable policy or custom. *Id.* at 35, 38. Moreover, the amended complaint contains allegations only as to Watkins. There are no allegations in the amended complaint from which the court could infer that Watkins has adequately pleaded a Wexford or Corizon custom or policy that proximately caused deprivation of his

---

[18] The court takes notice that Corizon Health became the contractual medical provider for the Maryland Department of Public Safety and Correctional Services on January 12, 2019. *See e.g. Hoffman v. Getachew*, Civil Action GLR-19-3644, 2021 WL 615137 *2; Def. Getachew's Mot. Dismiss Alt. Summ. J. Ex. 2 ["Getachew Aff."] ¶ 14, ECF 15-5). Before that date, Wexford was the contractual medical provider. (*Id.*).

constitutional rights. To the extent Watkins seeks to hold Wexford or Corizon liable for employing his medical providers, this is insufficient to establish liability against a private company under § 1983. *Hendrick,* 141 F. Supp. 3d at 401.

Similarly, Watkins fails to state a claim against the Utilization Review Board, ECF 84-1 at 5, *see Sorrick v. Manning,* 2017 WL 3668755 *8-9 (D. Md. Aug. 22, 2017) (dismissing Wexford Utilization Review in the absence of a particular custom or policy that led to deprivation of plaintiff's constitutional rights) or Correct RX Pharmacy Services, Inc.[19] *See Burns* 2019 WL 4169838 * 8 (dismissing Correct RX Pharmacy after finding the court could not infer an express policy or a widespread custom of constitutional violations based on plaintiff's conclusory statements). For these reasons, the claims against Wexford, Corizon, the Utilization Management Review Panel, and Correct RX Pharmacy Services, Inc. will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. Baltimore City

Watkins asserts that Baltimore City is the local government body responsible for the pretrial population at BCBIC and MRDCC. ECF 84-1 at 4. Watkins alleges that Baltimore City and its "policy-making" officials failed to act on their knowledge that BCBIC's conditions of confinement were unsanitary, inhumane, and unsafe and that BCBIC staff and members of the emergency response team/tactical unit had a "long-standing pattern and practice of assaulting and using various retaliation tactics against inmates who cooperated with the Baltimore City Police." ECF 84-1 at 34.

A plaintiff may allege a violation of §1983 under a "condonation theory" of liability where "municipal policymakers fail 'to put a stop to or correct a widespread pattern or practice of

---

[19]   Further, the allegations against Correct RX Pharmacy do not concern medication or treatment for Watkins's leg injury. ECF 84-1 at 31.

unconstitutional conduct.'" *Grim v. Baltimore Police Department*, No. ELH- 18-3864, 2019 WL

5865561, at \*19 (D. Md. Nov. 8, 2019) (quoting *Owens v. Baltimore City State's Attorney's Office*,

767 F.3d 379, 402 (4th Cir. 2015) (internal quotation and citation omitted)).  To assert a plausible

claim for relief under such theory, a plaintiff must allege "a 'persistent and widespread practice[

]of municipal officials,' the 'duration and frequency' of which indicate that policy makers (1) had

actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate

indifference.'" *Owens*, 767 F.3d at 402 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1386-91 (4th

Cir. 1987)).  Here, Watkins offers no facts to show that Baltimore City or its policy-makers were

aware of improper conduct or conditions, that there were similar incidents, or that there was a

specific custom or policy executed by defendants that caused the constitutional injury alleged.

Watkins fails to state a viable *Monell* claim against Baltimore City, and these claims shall be

dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(a),(b).  Accordingly, Baltimore

City will be dismissed as a defendant in this case.

### D. Retaliation

To state a retaliation claim, a plaintiff "must allege either that the retaliatory act was taken

in response to the exercise of a constitutionally protected right or that the act itself violated such a

right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).

> Retaliation, though it is not expressly referred to in the Constitution, is
> nonetheless actionable because retaliatory actions may tend to chill
> individuals' exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S.
> 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there
> is no need for the protection provided by a cause of action for retaliation.
> Thus, a showing of adversity is essential to any retaliation claim.

*ACLU of Md., Inc. v. Wicomico Cty, Md.*, 999 F.2d 780, 785 (4th Cir. 1993).

A First Amendment retaliation claim under § 1983 requires proof that (1) a plaintiff engaged in

constitutionally protected First Amendment activity, (2) a defendant took an action that adversely

affected that protected activity, and (3) there was a causal relationship between the protected activity and defendant's conduct. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). An action adversely affects a plaintiff's First Amendment rights if it would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin* 858 F.3d at 249 (quoting *Constantine*, 411 F.3d at 500). A causal connection between First Amendment activity and the alleged retaliatory action may be established by circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity and that the retaliation took place within some "temporal proximity" of that activity. *See Constantine*, 411 F.3d at 501.

Watkins alleges: (1) Lieutenant Fatima Patterson[20] and Lieutenant Norman Hawkins violated his rights under the First and Fourteenth Amendment, by recommending and approving him for administrative segregation because he had previously filed suit in this court against correctional officers ECF 84-1 at 32; (2) Iesha Butler filed a false infraction report based on "trumped up charges" against him to retaliate against him for filing his earlier lawsuit *Id.*; (3) "Defendant Thomas" retaliated against him for accessing the administrative grievance process and filing the earlier lawsuit; and (4) Sgt. Atikpoh recommended "trumped up" charges against him for using the prison grievance system. *Id.*

As noted, none of these defendants was a party in Watkins's earlier case. The earlier case was based on incidents at a different correctional facility. Further, Watkins offers no facts to suggest these defendants were aware of his earlier lawsuit or that this knowledge prompted the alleged retaliatory conduct. Watkins's conclusory allegation that Atikpoh and Thomas unlawfully retaliated against him for filing grievances fails to show a causal relationship between accessing

---

[20] The "Lt Patterson" named in CCB-17-2893 was Lt. Tamara Patterson. *Id.* at ECF 1, 3.

the administrative grievance process and his assignment to segregation based on a pending adjustment hearing. Watkins also acknowledges filing a number of ARPs during the time he was at BCBIC, *see e.g.* ECF 84-1 at 9. 10, thereby belying any suggestion that defendants' actions deterred his filing of grievances.

Watkins's allegations fall far short of stating a First Amendment claim for retaliation against Fatima Patterson, Norman Hawkins, Iesha Butler, Sgt. Atikpoh, and "Defendant Thomas"[21] and these claims will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Hawkins, "Defendant Thomas", and Atikpoh, will be dismissed as party defendants since Watkins raises no other claims against them.

### E. False Reports

A prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). However, "there are exceptions to this rule." *Cole v. Holloway*, 631 Fed. Appx. 185, 186 (4th Cir. 2016) (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (holding that a false disciplinary charge may be actionable under § 1983 if retaliatory)). As discussed above, Watkins fails to show the defendants were aware of his earlier civil action in this court, which was based on incidents at a different correctional facility, nor has he provided facts to support this otherwise conclusory allegation of retaliation. Further, he provides no factual basis to support his assertions that several medical providers fabricated his medical reports. To the extent Watkins intends to bring claims for false reports, these claims will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

---

[21] Watkins does not provide a first name for "Defendant Thomas." ECF 84 at 1, 32,

**F. ADA and Rehabilitation Act Claims**

Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, prohibits qualified individuals with disabilities from being excluded from participation in or being denied the benefits of the services, programs or activities of a public entity. Under Title II of the ADA, Watkins must show that: (1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; (3) he was excluded from the benefit due to discrimination based upon disability; and (4) the entity that provides the benefits is a public entity. *See* 42 U.S.C. § 12132; *Nat'l Fed'n of the Blind v. Lamone,* 813 F.3d 494, 502-03 (4th Cir. 2016) (*citing Constantine* 411 F.3d at 498). A state prison is a "public entity" within the meaning of the ADA, and, as such, Title II of the ADA is applicable to state prisons. *Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 210 (1998); *see also United States v. Georgia,* 546 U.S. 151, 154 (2006). Title II of the ADA is closely related to § 504 of the Rehabilitation Act, and to "the extent possible, [courts] construe similar provisions in the two statutes consistently." *Freilich v. Upper Chesapeake Health, Inc.,* 313 F.3d 205, 214 (4th Cir. 2002).

To the extent Watkins claims that the alleged denial of adequate medical treatment violates his rights under the ADA or the Rehabilitation Act ("RA"), however, the claim fails. Although the Fourth Circuit has not addressed this issue in a published opinion, unpublished cases from this circuit and published and unpublished cases from other circuits hold that a prisoner may not state a claim under the ADA or RA for a lack of medical treatment standing alone. *See, e.g., Goodman v. Johnson,* 524 F.App'x 887, 890 (4th Cir. 2013) (affirming dismissal of ADA claim that alleged prison refused to provide inmate contact lenses, instead of glasses, to correct his impaired vision, because the inmate failed to indicate that, due to his disability, he had been deprived of benefits for which he was otherwise qualified); *Miller v. Hinton,* 288 F.App'x 901, 902-03 (4th Cir. 2008)

28

(prison's alleged denial of access to colostomy bags and catheters by inmate, who was a paraplegic confined to a wheelchair and used such supplies for urinary bladder control, did not constitute disability discrimination in violation of ADA absent a showing that inmate was treated in that manner because of his disability); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (medical care provided to inmate for his diabetes could not be basis for RA action); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) inmate's claims under RA and ADA were properly dismissed for failure to state claim as they were based on medical treatment decisions); *Spencer v. Easter*, 109 F.App'x 571, 573 (4th Cir. 2004) (failure to provide timely refills of prescription drugs did not amount to an ADA violation where there was no showing that it was done based on prisoner's disability); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (stating that the ADA "does not create a remedy for medical malpractice.").

Watkins summarily asserts that defendants have violated his rights under the ADA and the Rehabilitation Acts, ECF 84-1 at 32-33, 34-38.   Assuming Watkins suffers from a qualifying disability, he fails to allege facts indicating that, due to his disability, he has been deprived of benefits for which he was otherwise qualified.   Accordingly, these claims will be dismissed.

### G. Conditions of Confinement

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners "after [the State] has secured a formal adjudication of guilt in accordance with due process of law." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).   For pretrial detainees, the Fourteenth Amendment affords protections "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id; see also Bell v. Wolfish*, 441 U.S. 520, 545 (1979), *Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001).

Prison officials are liable under the Eighth Amendment when they act with deliberate indifference by disregarding a known excessive risk to inmate health or safety. *See Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). To state a claim for deliberate indifference, a plaintiff must satisfy a two-part inquiry that includes both an objective and a subjective component. Objectively, a plaintiff must show "a serious deprivation" of rights "in the form of a serious or significant physical or emotional injury," *Danser v. Stansberry,* 772 F.3d 340, 346-47 (4th Cir. 2014), or "a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions," *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995). To establish the subjective component, there must be evidence of deliberate indifference, in that a known excessive risk of harm to the inmate's health or safety was disregarded. *Danser,* 72 F.3d at 347; *see Wilson v. Seiter,* 501 U.S. 294, 302-303 (1991) (applying the deliberate indifference standard to conditions of confinement claims).

Watkins alleges that upon moving to cell 36, he noticed a grate welded to the window, metal shavings around the bed, and mold and dust in the ventilation system. He immediately informed Defendants Thomas and Hall "about the conditions" of his cell, and they told him to stop complaining. ECF 84-1 at 10. This isolated incident falls short of stating a constitutional claim for deliberate indifference as to these two defendants. Watkins does not allege these defendants were aware that he had asthma or that the conditions of the cell otherwise posed an excessive risk to his health. These claims against Thomas and Hall will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the State Defendants Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF 53), defendants Ronald Crawford, Kemar Hines, Gerald Solomon, and Davon Telp's Motion to Dismiss (ECF 67) and defendants Oluyemi Abiodun and

Wexford Health Sources Inc's ("Wexford") Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF 79) will be denied without prejudice. Plaintiff's Motion to Amend the Complaint (ECF 84) will be granted.  Crawford, Hines, Solomon, and Telp's Motion to Strike (ECF 87) will be denied. Watkins's Motions for Extensions of Time (ECF 90, 92, 93) will be denied as moot.  Watkins's motion to file a fourth amended complaint (ECF 97) and his motion for default (ECF 98) will be denied.

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A (a),(b), Stephen Moyer, former Secretary of DPSCS, Robert Green, Secretary of DPSCS, Michael Resnick, the Commissioner of Pretrial Detention Services, Dionne Randolph, Acting Warden of BCBIC, Tyrell Wilson, Acting Assistant Warden of BCBIC, the Medical Director of BCBIC, the Medical Director of MRDCC, Sharon Baucom, Chief Medical Officer of DPSCS, Warden Walter West, former DPSCS Commissioner Wayne Hill, Warden Casey Campbell, Sergeant Bryant, supervisor of the Court Transportation Unit, the Assistant Warden of the Maryland Correctional Institution-Hagerstown, Jason Clem, Medical Director of ECI, the Deputy Corporate Medical Director, Kevin Hickson, Norman Hawkins, "Defendant Thomas" and Sergeant Atikpoh, Candice Crist, Wexford, Corizon, the Utilization Management Review Panel, and RX Correct Pharmacy Services, Inc., Baltimore City, Marie Desir, Paul Matera, Deborah Tabulov, Maksed Choudry, the Jane Doe Dispensary Nurses at Eastern Correctional Institution, and Jane Doe Dispensary Nurses at Roxbury Correctional Institution will be dismissed as defendants.

Watkins's retaliation, false report, ADA, and Rehabilitation Act claims will be dismissed. Watkins's remaining claims, including those based on (1) the December 2, 2017, incident; (2) the November 20, 2017 van transport incident; (3) his disciplinary hearings at BCBIC; (4) his return to his cell after his disciplinary hearing; (5) the conditions of his confinement in cell 36 at BCBIC; and (6) the medical care provided for the reinjury to his femur, as stated in the third amended complaint, may proceed.

A separate order follows.

_____9/23/21_____
Date

_____
Catherine C. Blake
United States District Judge

32