IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NAFIZ WATKINS, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 1:20-cv-00208-JRR |
| IESHA BUTLER, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Pending before the court are Defendants Wexford Health Sources, Inc., Kelly Bickford, and Crystal Jamison's (collectively, the "Wexford Defendants") Motion to Sever (ECF No. 246) and Motion to Bifurcate and Stay *Monell* Discovery (ECF No. 247). The court has reviewed all papers, and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion to Sever will be denied, and the Motion to Bifurcate and Stay *Monell* Discovery will be granted.

I. BACKGROUND[1]

   a. **Factual Background**

This action arises out of multiple alleged physical assaults and deliberate indifference to Plaintiff's medical condition during his custody.[2] (ECF No. 181 at p. 2.) Plaintiff has brought this action against state correctional officials and personnel (collectively, "State Defendants") and against contract medical providers that provide inmate healthcare, and the individual

---

[1] This case has an extensive factual and procedural background. For the sake of brevity, the court's discussion of the background here concerns the facts pertinent to the instant motions.
[2] Plaintiff filed the Omnibus Amended Complaint (ECF No. 171) on March 2, 2023. To correct noncompliance with the Local Rules, a corrected copy of the Omnibus Amended Complaint was filed at ECF No. 181. The court will refer to ECF No. 181 as the operative Omnibus Amended Complaint.

1

employees of those providers (collectively, "Medical Defendants").[3] Prior to the incidents discussed herein, Plaintiff was shot multiple times in his right hip, and his right femur was shattered. *Id.* ¶ 45.

Relevant here, on December 2, 2017, Plaintiff alleges he was having trouble breathing and was experiencing chest pain, but Defendant Ellice Hall refused to take him to medical for a nebulizer treatment. *Id.* ¶¶ 94–97. Plaintiff alleges that Defendant Hall's supervisor, Defendant Shawanda Jackson, similarly did not allow him to go to medical and threatened to pepper spray him if he did not return to his cell. *Id.* ¶¶ 98–101. Defendant Jackson then purportedly called for Defendants Davon Telp, Ronald Crawford, Bobby Allen, Gerald Solomon, Kemar Hines, and Brittain Butler. *Id.* ¶ 103. According to Plaintiff, these Defendants grabbed him from the table he was seated at, carried him to his cell, and restrained his arms. *Id.* ¶¶ 106–107. In particular, Plaintiff alleges that one officer kicked Plaintiff in the back of his right leg (the leg to which Plaintiff previously suffered a gunshot wound.) (ECF No. 181 ¶¶ 107–108.) After the officer kicked Plaintiff in his leg, Plaintiff contends there was a visible protrusion underneath the skin of Plaintiff's right thigh area, whereas there had previously been no visible protrusion. *Id.* ¶¶ 112–13.

Later that same day, Plaintiff began to panic and hyperventilate while in his cell and was then escorted to medical. *Id.* ¶ 118. During the visit, Plaintiff contends Dr. Oluyemi Abiodun, an employee of Wexford Health Sources, Inc., examined him and made him choose between treatment for his respiratory condition or his leg injury. *Id.* ¶¶ 32, 119, 121. Plaintiff chose treatment for his leg. *Id.* ¶ 121. Plaintiff states that Dr. Abiodun ordered x-rays of his leg, prescribed a walking cane, and altered Plaintiff's pain medication regiment, but declined to take

---

[3] The Medical Defendants include the Wexford Defendants—Wexford Health Sources, Inc., Kelly Bickford, and Crystal Jamison; Corizon Health Defendants—Corizon Health, Inc., Clayton Raab, Monica Stallworth, and Talmadge Reeves; and YesCare. (ECF No. 181.)

any other steps despite the "acute injury" to his leg. *Id.* ¶¶ 122–23. Plaintiff alleges that he saw Dr. Abiodun several times over the following days regarding the pain in his leg and symptoms associated with high blood pressure. (ECF No. 181 ¶ 135.)

On December 14, 2017, Plaintiff alleges he saw Dr. Mulugeta Akal, an employee of Wexford Health Sources, Inc., for a chronic care visit and informed the doctor that he had been kicked in his leg. *Id.* ¶¶ 34, 137. Plaintiff contends that at the time of the visit, his right leg was "swollen, tender and painful." *Id.* ¶ 138. Dr. Akal did not document that Plaintiff had been kicked in the leg or that there was any deformity to his right leg; however, Dr. Akal did note that Plaintiff's blood pressure was elevated and ordered blood work to determine the cause of same. *Id.* ¶¶ 139–40. According to Plaintiff, he did not receive any further treatment or testing. *Id.* ¶ 143. Plaintiff contends that, throughout January 2018, he continued to report pain in his right leg, and that medical staff did nothing to investigate the cause of his pain and minimized his complaints. *Id.* ¶¶ 144–45.

Following an alleged sexual assault on Plaintiff on September 21, 2018, Plaintiff was taken to Meritus Medical Center for a PREA evaluation. (ECF No. 181 ¶ 186.) While there, Plaintiff states that Dr. Candice Crist "ordered x-rays of [his] right femur because [he] mentioned he had severe and worsening pain in his right leg for almost an entire year." *Id.* ¶ 187. The x-rays revealed "extensive new bone formation" that may be related to osteomyelitis. *Id.* ¶¶ 191–192. Plaintiff contends that Defendant Kelly Bickford received a copy of the radiologist's impressions and that he informed Defendant Bickford of his leg pain and the possible osteomyelitis. *Id.* ¶¶ 194–95. However, according to Plaintiff, Defendant Bickford "declined to follow the [radiologist's] instructions for follow up care" for his leg. *Id.* ¶¶ 197–99.

3

Days later, Plaintiff saw Defendant Crystal Jamison for treatment. *Id.* ¶ 202. Plaintiff alleges that he informed Defendant Jamison of his x-ray results and of the possibility of osteomyelitis, yet she "completely ignored [his] complaint related to his leg" and refused to examine his leg, schedule a follow up appointment, or furnish him with a cane. (ECF No. 181 ¶¶ 203–206.) Left without the aid of the cane to enable him to ambulate, Plaintiff contends that Defendant Officers Caleb Silver, Brett Thrush, and Dustin Wills dragged him back to his housing unit, and rammed his head into gates and walls along the way. *Id.* ¶¶ 207–208. The Defendant Officers then allegedly took turns "punching, kicking, and slapping" him. *Id.* ¶¶ 209–11. Once they arrived at his cell, Plaintiff states that the officers pinned him to the ground and beat him for five to 10 minutes while he was handcuffed. *Id.* ¶¶ 216–18. Plaintiff alleges that Defendant Wills then told Plaintiff, "I am going to uncuff you now. Don't move until we leave this cell or we will break both your legs." *Id.* ¶ 219. After the officers exited Plaintiff's cell, Plaintiff reports that Defendant Mills told him, "If you say anything to anybody, we will come back and beat you to death." *Id.* ¶ 221.

b. **Procedural Background**

Plaintiff initiated this action *pro se* when he filed a complaint in this court on January 23, 2020 ("Case No. 1:20-cv-00208"). (ECF No. 1.) Plaintiff subsequently filed two additional actions *pro se* on February 8, 2021 ("Case No. 1:21-cv-00274") and on September 27, 2021 ("Case No. 1:21-cv-02466"). Plaintiff's claims against Medical Defendants were asserted in Case No. 1:20-cv-00208. After a series of amendments, then-Defendants Dr. Abiodun, Dr. Akal, Munjanja Litell, Lum Maximuangu, and Olufemi Olawale, as well as Wexford Defendants Bickford and Jamison, moved to dismiss, or in the alternative, for summary judgment, of Plaintiff's third amended complaint. (ECF No. 136.) On June 17, 2022, the court granted

4

summary judgment for these movant Defendants. (ECF Nos. 147, 148.) At that time, the above Defendants, including Defendants Bickford and Jamison, were terminated as parties. (ECF No. 148.) Shortly thereafter, on June 22, 2022, Plaintiff's newly-retained counsel entered their appearances. (ECF No. 149.) Plaintiff, through counsel, then filed a motion seeking relief from the court's judgment at ECF No. 147. (ECF No. 150.) While that motion was pending, Plaintiff also filed a motion titled "Plaintiff's Consent Motion to Consolidate," which sought to consolidate Case Nos. 1:20-cv-00208, 1:21-cv-00274, and 1:21-cv-02466. (ECF No. 165.) In that motion, Plaintiff asserted that counsel for all Defendants in the three cases consented to consolidation, but noted in a footnote that he did not contact the Defendants or counsel for Wexford Health Sources, Inc. (and its employees), as they were not presently parties, and thus the Wexford Defendants neither consented to nor opposed the motion. *Id.* at p. 9 n.1.

On December 22, 2022, the court entered two orders: first, granting Plaintiff's motion for relief from the judgment at ECF No. 147, thus reinstituting the Defendants with Wexford Health Sources, Inc. as parties in this action; and second, granting Plaintiff's motion to consolidate. (ECF Nos. 166, 167.) Per the court's order, Plaintiff then filed an Omnibus Amended Complaint on March 2, 2023. (ECF Nos. 171, 181.) The Omnibus Amended Complaint set forth ten counts. Following motions practice, the following counts and Defendants remain: <u>Count I</u>: Violation of 42 U.S.C. § 1983 – Excessive Use of Force in Violation of the Eighth Amendment for the December 2, 2017 Assault against Defendants Telp, Crawford, Allen, Solomon, Hines, and Brittain Butler in their individual capacities; <u>Count II</u>: Violation of 42 U.S.C. § 1983 – Excessive Use of Force in Violation of the Eighth Amendment for the February 14, 2018 Assault against Defendants Ahmed, McCall, and Estep in their individual capacities; <u>Count III</u>: Violation of 42 U.S.C. § 1983 – Excessive Use of Force in Violation of the Eighth Amendment for the

September 21, 2018 Assault against Defendants Perry and Didawick in their individual capacities; Count IV: Violation of 42 U.S.C. § 1983 – Excessive Use of Force in Violation of the Eighth Amendment for the September 22, 2018 Assault against Defendants Silver and Thrush in their individual capacities; Count V: Violation of 42 U.S.C. § 1983 – Excessive Use of Force in Violation of the Eighth Amendment for the November 8, 2018 Assault against Defendants Kyeremeh and Hutzell in their individual capacities; Count VI: Violation of 42 U.S.C. § 1985 – Conspiracy to Interfere with Civil Rights against Defendants Powell, Ahmed, Estep, McCall, Didawick, Silver, Kyeremeh, Hutzell, Wills, Mills, Iesha Butler, Hall, Patterson, Williams, Jackson, Crawford, Hines, Solomon, Telp, Allen, and Brittain Butler; Count VII: Violation of 42 U.S.C. § 1983 – Deliberate Indifference in Violation of the Eighth Amendment against Defendants Bickford, Jamison, Corizon Health Inc., Raab, Stallworth, Reeves, and YesCare; and Count VIII: a *Monell* Claim under 42 U.S.C. § 1983 – Pattern or Practice Violation of the Eighth Amendment against Wexford Health Sources, Inc., Corizon Health Inc., and YesCare.[4]  (ECF No. 181 at p. 33–48; ECF Nos. 222, 238.)

The Wexford Defendants now bring the two present motions: the Motion to Sever, and the Motion to Bifurcate and Stay *Monell* Discovery.  (ECF Nos. 246, 247.)  The relief requested in both motions would affect additional Defendants, specifically, Corizon Health, Inc., Clayton Raab, Monica Stallworth, Talmadge Reeves, and YesCare.  No other Defendants have responded to the motions, however, the court notes this action is stayed as to Corizon Health, Inc., upon the suggestion of bankruptcy.  (ECF No. 186.)

---

[4] Plaintiff filed a Line regarding the status of Defendants in response to the court's order at ECF No. 258.  (ECF No. 263.)  In so doing, Plaintiff identified the pending counts against each Defendant but erroneously identified that Count IV was pending against Defendants Wills and Mills, and that Count VII was not pending against YesCare.  This is inconsistent with the Omnibus Amended Complaint.  (ECF No. 181 at p. 38, 43).

## II. MOTION TO SEVER

The Wexford Defendants bring the Motion to Sever upon the assertion that joinder of the Wexford Defendants (as well as all Medical Defendants) with the State Defendants was improper under Federal Rule of Civil Procedure 20(a)(2). (ECF No. 246-1 at p. 8.) Thus, they contend that the court should sever the Medical Defendants claims from the State Defendants claims pursuant to Rule 21. (ECF No. 246-1 at p. 10.) Plaintiff opposes the Motion to Sever, asserting that the allegations of the assault and injury to Plaintiff's leg and the subsequent denial of medical care for his injury are "in the most basic understanding of the phrase, a common transaction, occurrence, or series of transactions or occurrences." (ECF No. 248 at p. 1–2.)

### a. Analysis

Federal Rule of Civil Procedure 21, titled "Misjoinder and Nonjoinder of Parties," states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." FED. R. CIV. P. 21. "The decision whether to sever . . . is necessarily committed to trial court discretion." *Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 192 (4th Cir. 1982), *on reh'g*, 712 F.2d 899 (4th Cir. 1983). District courts have "broad discretion in deciding whether to grant severance." *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007). *See TK Elevator Corp. v. Windward Towers Condo. Owners Ass'n, Inc.*, No. 123CV748RDAIDD, 2024 WL 712534, at *2 (E.D. Va. Feb. 21, 2024) ("The court has virtually unfettered discretion in determining whether or not severance is appropriate." (citation omitted)).

"[D]istrict courts in the Fourth Circuit use the same four-factor test for considering severance as is used for considering consolidation." *Antoine v. Amick Farms, LLC*, No. CV ELH-16-2444, 2017 WL 68646, at *11 (D. Md. Jan. 6, 2017).

> The critical question for the district court in the final analysis was whether the specific risks of prejudice and possible confusion were overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Arnold*, 681 F.2d at 193. "Parties are considered to be 'misjoined' under Rule 21 when they fail to satisfy either of the preconditions for permissive joinder of parties set forth in Rule 20(a)." *Antoine*, 2017 WL 68646, at *11 (citation omitted). Because the court's analysis of whether severance is appropriate turns on whether the Medical Defendants, including the Wexford Defendants, were improperly joined under Rule 20(a)(2), it must first determine whether the requirements of Rule 20(a)(2) were met.

Rule 20(a)(2) governs permissive joinder of parties. It provides that defendants may be joined in one action if two requirements are met: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). Under the Federal Rules of Civil Procedure on joinder, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties," thus "joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). *See Lanier Bus. Prod. v. Graymar Co.*, 342 F. Supp. 1200, 1203 (D. Md. 1972) (same).

The transaction or occurrence assessment allows all "reasonably related claims . . . to be tried in a single proceeding," *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983), but "simply having a number of claims, whether valid or not, against a number of parties, does not mean all those cases may necessarily be combined into one." *Lewis-Davis v. Bd. of Educ. of Baltimore*

8

*Cnty.*, No. CV ELH-20-0423, 2021 WL 4772918, at *25 (D. Md. Oct. 13, 2021). The transaction or occurrence rule "should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Saval*, 710 F.2d at 1031 (citations omitted). "Application of this [transaction or occurrence] test has generally proceeded on a case by case basis." *Id.* "[C]ourts generally construe the phrase 'same transaction or occurrence' liberally insofar as claims arise from the same transaction or occurrence if they have a logical relationship to one another." *Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F. Supp. 2d 375, 382 (D. Md. 2011). "[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay." *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007) (citation omitted). This court has further explained:

> Courts liberally construe the first requirement and find that claims arise from the same transaction or occurrence if they have a logical relationship to one another. Similarly, the second requirement does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be *at least one* common question of law *or* fact.

*Montessori Soc'y of Cent. Maryland, Inc. v. Hicks*, No. CV DKC 19-2358, 2019 WL 6117422, at *3 (D. Md. Nov. 18, 2019) (emphasis in original) (citations omitted).

The Wexford Defendants assert that joinder was improper as neither requirement of Rule 20(a)(2) is met. First, they argue that Plaintiff has not asserted a common transaction, occurrence, or series of transactions or occurrences, because "[he] does not allege that the State Defendants were responsible for medical care" or "that the Medical Defendants were responsible for assaulting him." (ECF No. 246-1 at p. 9.) Second, they argue there is no common question

9

of law or fact beyond that State and Medical Defendants are both subject to Eighth Amendment claims. *Id.* at p. 9–10.

The Wexford Defendants take too narrow a view of Plaintiff's allegations. Although all allegations do not pertain to all Defendants, the court concludes that the Wexford Defendants were still properly joined in accordance with Rule 20(a)(2). As detailed more thoroughly *supra*, Plaintiff alleges that a State Defendant kicked him, causing injury to his leg. That same day, Plaintiff sought care from a provider with Wexford Health Sources, Inc., who, Plaintiff alleges, only allowed him treatment for one medical condition, did not treat his injury from the assault, and made records about the injury inconsistent with his past medical records. He further alleges that the Wexford Health Sources, Inc. providers continued to ignore his injury and complaints over the course of months. Then, once an x-ray was finally taken of his leg months later, Plaintiff alleges that Wexford Defendants Bickford and Jamison continued to ignore x-ray results showing a possible serious medical condition that resulted from the injury, and to deny him treatment for his leg injury. As a result of Defendant Jamison's denial of treatment and care, namely Plaintiff's use of his cane, Plaintiff contends that State Defendants dragged him through the hallway, ramming his head against gates and walls. It also bears repeating that Plaintiff's claims against the Wexford Defendants are not just purported deliberate indifference by Defendants Bickford and Jamison; Plaintiff also alleges that Wexford Health Sources, Inc., maintained a policy or custom of "ignoring inmate health concerns, and denying treatment and diagnostic tests for inmates with serious medical issues." (ECF No. 181 ¶ 386.)

Such allegations, especially with a liberal construction, *see Montessori Soc'y of Cent. Maryland, Inc.*, 2019 WL 6117422, at *3, *supra*, establish a common transaction, occurrence, or series of transaction or occurrences. The allegations are logically related: they relate to an injury

by State Defendants that was ignored by the Wexford Defendants (and Wexford Health Sources, Inc. providers), resulting in a significant health condition, and preceded further additional injury by State Defendants.  *See Stephens*, 807 F. Supp. 2d at 382, *supra*.  Perhaps most clearly, Plaintiff alleges that he repeatedly sought treatment for his injured leg, for months from the day of injury, and that Wexford Health Sources, Inc. providers failed to address his medical concerns related to his injury.  Such allegations are logically related to the claim that Wexford Health Sources, Inc. "maintained an official policy and/or custom of ignoring inmates['] health concerns, and denying treatment and diagnostic tests for inmates with serious medical issues." (ECF No. 181 ¶ 386.)  Moreover, the court is similarly satisfied that there is "*at least one* common question of law *or* fact" in the allegations, *see Montessori Soc'y of Cent. Maryland, Inc.*, 2019 WL 6117422, at *3, *supra*—Plaintiff's leg injury being the most obvious.

Accordingly, the court finds that the Wexford Defendants were properly joined in accordance with Rule 20(a)(2).  Because the court thus concludes, it will not address whether severance under Rule 21 is appropriate.  *See* FED. R. CIV. P. 21, *supra*.

### III.   MOTION TO BIFURCATE AND STAY *MONELL* DISCOVERY

The Wexford Defendants also ask this court to enter an order "bifurcating the trial of this action and staying discovery relating to the *Monell* claims against the corporate Medical Defendants."  (ECF No. 247-1 at p. 3.)  The Wexford Defendants argue that bifurcation of the *Monell* claims would "prevent the parties from wasting time and money conducting discovery relating to the *Monell* claims" and "would ensure that the individual Medical Defendants receive a fair trial, untainted by prejudicial evidence of the corporate Medical Defendants' policies, practices, and customs."  *Id.* at p. 3–4.  Further, the Wexford Defendants ask the court to stay discovery concerning the *Monell* claim until the outcome of a first trial against the individual

Medical Defendants. *Id.* at p. 4. Plaintiff opposes the request to bifurcate *Monell* claims and stay *Monell* discovery, asserting that his *Monell* claim "is not dependent on a finding that the individual defendants violated the Plaintiff's civil rights," and the court should defer the question of bifurcation until after the completion of discovery. (ECF No. 249 at p. 2–5.)

By way of background, in *Monell v. Department of Social Services of City of New York*, the Supreme Court held that 42 U.S.C. § 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." 436 U.S. 658, 692 (1978). Accordingly, "a viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 554 (D. Md. 2021) (citing *Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403, 117 (1997) (citations omitted)). Moreover, "*Monell* liability has been extended to private entities operating under color of state law, including private prison health care providers." *Haughie v. Wexford Health Sources, Inc.*, No. CV ELH-18-3963, 2020 WL 1158568, at *15 (D. Md. Mar. 9, 2020) (citing cases). "Standards applicable to municipalities are also applicable to private corporations acting under color of state law." *Green v. Obsu*, 2020 WL 758141, at *10 (D. Md. Feb. 13, 2020) (citing *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003)).

    a. **Analysis**

Federal Rule of Civil Procedure 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). "Notably, Rule 42(b) is disjunctive, meaning '[o]nly one of these criteria need be met to justify bifurcation.'"

*Saltz*, 538 F. Supp. 3d at 561 (quoting *Saxion v. Titan-C-Mfg.*, 86 F.3d 553, 556 (6th Cir. 1996)). The decision to bifurcate claims for trial is committed to the court's "broad discretion," and "that discretion will be set aside only if clearly abused." *Id.* (quoting *Beasley v. Kelly*, DKC-10-0049, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010)). While "the decision of whether to bifurcate is a fact-specific inquiry," *Cottman v. Baltimore Police Dep't*, No. 21-CV-00837-SAG, 2022 WL 2073852, at *2 (D. Md. June 9, 2022), this court has held that "[c]ases that contain *Monell* claims 'are good candidates for bifurcation.'" *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 460 (D. Md. 2020) (quoting *Beasley*, 2010 WL 3221848, at *3). Relevant here, as Plaintiff's claims are based on 42 U.S.C. § 1983, "[b]ifurcation is common in § 1983 cases in which claims are asserted against individual defendants and their municipal employers," and "[c]ourts have consistently found that 'bifurcation of . . . *Monell* supervisory claims from the individual claims is appropriate and often desirable.'" *Haughie*, 2020 WL 1158568, at *16 (quoting *Brown v. Bailey*, No. CIV.A. RDB-11-01901, 2012 WL 2188338, at *4 (D. Md. June 13, 2012)).

A plaintiff's § 1983 *Monell* claims generally "hinge on his ability to show that [individual defendants] violated his constitutional rights." *Id.* (quoting *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)). *See Brissett v. Paul*, 141 F.3d 1157 (4th Cir. 1998) (discussing the bifurcated claims against the officer and the municipality); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that *Monell* did not authorize damages against a municipal corporation based on the actions of its officer where the jury concluded that the officer "inflicted no constitutional harm" and was not instructed on any affirmative defense of the officer).

That notwithstanding, courts have recognized "narrow circumstances in which 'a finding of no liability on the part of the individual municipal actors can co-exist with a finding of

13

liability on the part of the municipality.'" *Johnson*, 500 F. Supp. 3d at 465 (citing *Int'l Ground Transp. v. Mayor And City Council Of Ocean City, MD*, 475 F.3d 214, 219 (4th Cir. 2007) ("[A] situation may arise in which a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality.")). Such narrow circumstances are limited to where "a finding would not create an *inconsistent* verdict as to the individual defendants," such as where a jury could find that individual medical professionals were not deliberately indifferent to the plaintiff's medical needs but were unable to respond adequately "because of the well-documented breakdowns in the [municipality's] policies for retrieving medical request forms," *see, e.g.*, *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 305 (7th Cir. 2010); where a jury could find an individual defendant did not act with bad faith but the municipality was liable for failing to train or supervise him, *see, e.g.*, *Mervilus v. Union Cnty.*, 73 F.4th 185, 197 (3d Cir. 2023); "where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation," *see e.g.*, *Speer v. City of Wynne, Arkansas*, 276 F.3d 980, 986 (8th Cir. 2002); where "the injuries complained of are not solely attributable to the actions of named individual defendants," *see, e.g., Barrett v. Orange Cnty. Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999); and where an individual defendant was not liable upon evidence that he had no discretion to deviate from a purported mandatory policy of the municipality, *see, e.g.*, *Barnett v. MacArthur*, 956 F.3d 1291, 1302–03 (11th Cir. 2020).[5]  *Haughie*, 2020 WL 1158568, at *17 (quoting *Thomas*, 604

---

[5] Though both decided the year before the Supreme Court's decision in *City of Los Angeles v. Heller*, 475 U.S. 796 (1986), additional examples may include where a jury finds "that the deprivation of [the plaintiff's] constitutional rights was a result of understaffing," *see, e.g.*, *Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985); and where "the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights, even if the conduct of no one employee may violate those rights, *see, e.g.*, *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 310 (10th Cir. 1985).

F.3d at 305) (emphasis in original).  *See also Jones v. Chapman*, No. CV ELH-14-2627, 2017 WL 2472220, at *44 (D. Md. June 7, 2017) (same); *Bost v. Wexford Health Sources, Inc.*, No. CV ELH-15-3278, 2017 WL 1862486, at *10 (D. Md. May 8, 2017) (same).

The court will decline to decide at this juncture whether Plaintiff's *Monell* claim would proceed "if a jury were to exonerate the Individual Medical Defendants," as such determination is premature, and not determinative in its decision to bifurcate and stay.  *See Haughie*, 2020 WL 1158568, *18 (finding bifurcation appropriate and declining to address whether the *Monell* claim would succeed absent a finding of liability by the individual medical defendants).  *Cf. Thomas*, 604 F.3d at 305 (explaining that determination of whether the county's liability was dependent on its officer required the court to look to factors including "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth").

Contrary to Plaintiff's assertion, the rationale for bifurcating *Monell* claims in § 1983 actions is not solely that generally those claims hinge on the ability to show that individual defendants violated constitutional rights.  (ECF No. 249 at p. 2–5.)  Bifurcation (and a related stay) also work to "spare the parties from expending valuable resources in discovery, because resolution of the claims as to the individual defendants may obviate the need to litigate the *Monell* claim." *Johnson*, 500 F. Supp. 3d at 460.  Moreover, bifurcation also "prevent[s] the potential prejudice to individual defendants that might result from the introduction of inflammatory evidence concerning the municipality's policies, practices, or customs."  *Id.*  Notably, Plaintiff appears to acknowledge that bifurcation of the claims for trial "may . . . be necessary," but contends the court should not make that decision now and that a stay of *Monell* discovery is not warranted.  (ECF No. 249 at p. 5.)

As the court previously held in *Haughie*, bifurcation is similarly appropriate here,

"because it will promote judicial economy, conserve the parties' resources, and avoid prejudice to the individual Medical Defendants, and will not prejudice the Plaintiff." 2020 WL 1158568, at *18. The court's reasoning is persuasive here:

> As a practical matter, it would save time and resources, and promote judicial economy, to defer consideration of the *Monell* claim until after a determination of the liability of the Individual Medical Defendants. If [the plaintiff] fails to succeed on his claim of constitutionally inadequate medical care, this may obviate altogether the basis for a *Monell* claim. If he does not succeed on the individual claims, he might also choose to forgo the *Monell* claim. And, if he does succeed in the claims against the Individual Medical Defendants, Wexford might consider a resolution of the *Monell* claim, without the need for a trial. Any one of these scenarios would spare the Court and the parties of the burdens and challenges of litigating the *Monell* claim.
>
> Moreover, the scope of discovery in a case with a *Monell* [c]laim is far broader than what is appropriate in an inadequate medical care claim. In a *Monell* case, a plaintiff generally seeks to rely on prior incidents involving other people. . . . According to defendants, such discovery would involve combing through the records of 18,000 to 21,000 inmates. This is obviously unduly burdensome when the need for such information is unrelated to the threshold claim.
>
> Notably, evidence of any prior failures of Wexford to provide adequate care to inmates in unrelated situations may be admissible against Wexford in regard to the *Monell* claim. But, such evidence is not likely to be admissible against the Individual Medical Defendants.
>
> Such evidence is also potentially inflammatory in regard to the individual defendants, and it would be difficult for the jury to compartmentalize such evidence. *See Veal v. Kachiroubas*, No. 12 C 8342, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014) ("Presenting evidence to the jury regarding a village-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely acts improperly, even if the officers acted properly in this case."); [*Taylor v. Maryland*, DKC-10-2167, 2010 WL 5247903, at *2 (D. Md. Dec. 16, 2020)] ("[W]hile a jury instruction could limit the harm to [the defendant] from prejudicial evidence, no instruction is

16

> likely to remove entirely the potential for prejudice."); *Beasley*, 2010 WL 3221848, at *3 (finding that such evidence against a municipality "would be highly prejudicial to the individual government employees"). Bifurcation of the *Monell* [c]laim will allow the Court to separate issues and evidence as necessary to avoid prejudice.
>
> In addition, bifurcation will facilitate an expeditious trial as to the Individual Medical Defendants (assuming the constitutional claim survives to trial), because it avoids the delay inherent in the extensive discovery that would be required to establish a *Monell* claim. This would lead to a reduction of costs, without any real prejudice to plaintiff. And, if the case goes to trial on the threshold claim, this avoids prolonging the trial.

*Haughie*, 2020 WL 1158568, at *18–19 (record citations omitted).

Plaintiff argues that bifurcation and a stay would "prevent proceeding to discovery, dispositive motions, or a trial on his *Monell* claims." (ECF No. 249 at p. 6.) This is not compelling. "Streamlining the issues and limiting discovery . . . initially will curb rather than increase costs, and if a second trial is necessary, any issues litigated in the first trial will be binding upon the parties during the second phase." *Taylor v. Maryland*, No. CIV.A. DKC 10-2167, 2010 WL 5247903, at *2 (D. Md. Dec. 16, 2010). The extensive discovery associated with a *Monell* claim would cause an inherent delay in the already complex discovery that is sure to occur in this action, and will further delay trial for all Individual Defendants. For all the foregoing reasons, the court similarly finds bifurcation and a stay of discovery on the *Monell* claim is warranted.

### IV. CONCLUSION

For the reasons set forth herein, by separate order, the Wexford Defendants' Motion to Sever (ECF No. 246) will be denied, and Motion to Bifurcate and Stay *Monell* Discovery (ECF

No. 247) will be granted.[6]

May 20, 2024

/s/_____
Julie R. Rubin
United States District Judge

---

[6] Counsel are reminded of their obligation to "conduct themselves in a professional and courteous manner" in accordance with Local Rule 606. To that end, flippant comments made in a brief to this court that mock or belittle an opposing party or counsel are, at the very least, not within the spirit of the rule, do not amount to compelling advocacy, and are not persuasive to this court. In short, cut it out.